STATE, EX REL. HOLLIDAY, *v.* KING ET AL.

[No. 4,286. Filed January 29, 1903.]

OFFICERS.—*Service of Process.*—*Duty of Officer.*—When process in due form of law, regular upon its face, and duly authenticated, from a court having jurisdiction of the subject-matter, comes into the hands of a ministerial officer, his duty is to execute it according to its terms. He is not required to inquire into the regularity of the proceedings of the court from which it issued. *pp. 394, 395.*

SHERIFFS.—*Execution Sale Pending Suit to Review Judgment.*—*Liability of Sheriff and His Bondsmen.*—In a suit to foreclose a mortgage executed by a husband and wife, certain judgment creditors were made parties defendant, and the wife who was served with process failed to appear and was defaulted, and a decree was entered providing that the surplus over the mortgage be applied to pay the claims of the judgment creditors. Prior to the foreclosure sale the wife brought suit to review the judgment on the ground that the amount of the surplus would be less than her inchoate interest in the land. The sheriff was made a party to the suit to review, but no order was issued restraining him from making the sale and distributing the proceeds pursuant to the foreclosure decree. Pending the suit to review, the sheriff, under the decree and order of sale issued to him, sold the land, and paid the surplus to the judgment creditors. Subsequently the decree of foreclosure was modified as prayed by the wife. *Held*, in an action by the wife against the sheriff and his bondsmen to recover the money paid by the sheriff to the judgment creditors, that there could be no recovery. *pp. 390–399.*

From Tippecanoe Superior Court; *W. D. Wallace*, Judge.

Action by the State on the relation of Sarah Holliday against George B. King, as sheriff of Tippecanoe county, and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*C. M. Bright, D. C. Wilson* and *M. A. Quinn*, for appellant.

*E. P. Hammond, W. V. Stuart, D. W. Simms, C. E.*

State, *ex rel., v.* King.

*Thompson, D. E. Storms, B. W. Langdon* and *W. R. Coffroth,* for appellees.

ROBINSON, J.—Suit against appellee King, as sheriff, and his bondsmen, to recover money alleged to have been received for the use of relatrix. The complaint filed December 8, 1899, avers that theretofore one Lucas began foreclosure proceedings against relatrix and her husband to collect a debt owing by her husband and foreclose a mortgage on lands owned by her husband, in which mortgage she had joined. William V. Stuart and William F. Bartmess each held a personal judgment against the husband, and were made parties. The only process upon relatrix was the original summons issued at the instance of Lucas. Relatrix did not appear, and was defaulted. The holders of the personal judgments answered, setting out their judgments. The foreclosure decree provided that the surplus, if any, over an amount sufficient to satisfy the mortgage, be applied on the personal judgments of Bartmess and Stuart; that the amount necessary to satisfy the mortgage was $3,368.35; that afterwards Stuart took an assignment of the Lucas judgment, and caused the land to be sold by the sheriff in June, 1899, for $4,600; that King, the sheriff, applied on the Lucas judgment $3,368.35, and of the balance applied $304.41 on the Bartmess judgment, and $927.24 on the Stuart judgment; that the amount of the two last-named sums so applied, to wit, $1,231.65, was less than the value of the inchoate interest of relatrix in the land as against Bartmess and Stuart. It is also averred that before these sums were so applied, relatrix, as such wife, demanded the same of King, and also filed a complaint in the Tippecanoe Superior Court asking for the review of the original decree, and asking to restrain the sheriff from so applying such sum, and that summons was issued and served on King prior to the time of such application; that thereafter King took sufficient undertaking from Bartmess and Stuart to

State, *ex rel.*, *v.* King.

protect him, and thereupon paid over the balance to them. Thereafter the Tippecanoe Superior Court set aside and held for naught that part of the decree requiring the sheriff to apply the balance, after paying the Lucas judgment, to the payment of the Bartmess and Stuart judgments. The complaint avers a demand · before suit, and makes the sheriff's bond an exhibit. A second paragraph of complaint avers substantially, but more fully, the same facts, except it contains no averment that the decree as to the personal judgments was void, and that the sheriff was so notified before the sale.

Appellees' answer admits the bringing of the foreclosure suit, sets out in full the decree, alleges that the decree remained in full force until the 25th day of November, 1899, when so much as related to the application of the surplus arising from the sale, above the amount necessary to pay the Lucas judgment, was set aside; that at the time of rendering the Lucas judgment the court had jurisdiction of the subject-matter of the action, and of all parties thereto, and of all matters therein adjudicated, and that the decree was in all respects legally and duly recovered; that on the 9th day of May, 1899, the clerk of the court issued to the sheriff a certified copy of the decree with an order of sale; that the land was duly advertised for sale, and was sold June 10, 1899, for $4,600; that on the same day the sheriff paid of this sum $3,248.35 to Stuart, the assignee of the Lucas judgment, and, after paying costs, had $1,231.65 in his hands; that on that day the sheriff held executions theretofore duly issued on the Bartmess and Stuart judgments, and applied such surplus in accordance with the decree on these executions, of all of which he made due return; copies of the judgment, decree, and order of sale, and return are made exhibits; that on the same day, and a few hours before the sale on June 10, 1899, relatrix commenced the suit mentioned in the complaint against her husband, Bartmess, Stuart, King, and others, asking, among other

relief, that so much of the decree in the Lucas foreclosure as provided for paying the surplus on the Bartmess and Stuart judgments should be set aside, and to restrain King from carrying out the provisions of the decree as to such surplus; that such proceedings were had, and on November 25, 1899, the court modified the former decree by striking therefrom as null and void the following: "The surplus, if any, remaining after the payment of the foregoing judgment, interest, and costs, to be paid by the sheriff, first to the satisfaction of the judgment of the defendant William F. Bartmess, next to the judgment of the defendant William V. Stuart, the balance, if any, to be paid to the defendant Eli Holliday; provided, that, at the time of such sale, the sheriff shall have in his hands execution on said judgments in favor of said Bartmess and said Stuart, but if such executions are not in the sheriff's hands at that time he shall pay such surplus into this court;" that no other modification was ever made than that above set out, nor did the court in any other action decree how the surplus should be applied, other than the order in the former decree; that from the decree modifying the original decree Bartmess, Stuart, and King appealed to the Supreme Court (the case afterwards having been transferred to the Appellate Court), and executed an appeal bond; that in the action commenced June 10, 1899, by the relatrix, she did not verify her complaint or file any affidavit in support of the averments of her complaint, nor did any person do so for her, nor did she file any undertaking for the purpose of procuring any restraining order or injunction, nor did the court or judge issue any injunction or restraining order to enjoin or restrain the sheriff from applying such surplus according to the decree, nor was any injunction or restraining order ever issued; that in making the application of such surplus the sheriff acted strictly in conformity with the judgment and decree which was in force unchanged and unmodified, and so remained until November 25, 1899, and long after such application

of such surplus; that at the time relatrix demanded that the sheriff pay such surplus to her she did not have, nor has she ever had, any order or decree requiring such payment to be made to her, nor was there in the Lucas decree any order that the undivided two-thirds of the real estate should first be offered for sale, nor did relatrix, by any pleading or otherwise, ask for such order or decree, nor was it determined in that action that the relatrix had any interest in the land; that in applying the surplus to the payment of such judgments the sheriff did so on the demand of Bartmess and Stuart, as well as in conformity with the decree.

The second paragraph of reply sets out more in detail the facts averred in the complaint; that the only averment in the Lucas foreclosure complaint as to the Stuart and Bartmess interests was that they were each claiming some interest unknown, but inferior to plaintiff's rights, and were made parties to answer to such interest; sets out copies of the answers of Stuart and Bartmess in that suit, in which it appears they only claimed to have personal judgments against relatrix' husband and John Holliday, which were junior liens to Lucas' mortgage; that they filed no other pleadings; that at the time of the foreclosure decree Eli Holliday was the owner in fee simple of the land, and that relatrix had not conveyed her interest to anyone; that on the day of and prior to the sale of the land relatrix notified the sheriff that she was the wife of Eli Holliday, and as against the judgment liens of Bartmess and Stuart she was entitled to the undivided one-third of the land, or of the proceeds thereof; that after the sale, and while the money was still in his hands, she demanded all the money above the amount necessary to pay the Lucas judgment, which demand he refused; that in the suit brought by her on June 10, 1899, against the sheriff and others, process was issued and served upon the sheriff, before he sold the land or offered it for sale; that the sheriff, while the money was still in his hands, had full knowledge of the fact that that action was

brought by the relatrix to set aside, and enjoin him from carrying out the terms of that portion of the decree as to the application of the surplus; that the land was never redeemed from the sheriff's sale; that the surplus was so applied by the sheriff over the protests and objections of relatrix, and after he had taken a bond from Bartmess and Stuart to indemnify him against any loss; that the executions in favor of Bartmess and Stuart were each issued upon personal judgments against Eli Holliday, and that relatrix was not a party to the judgments, and that the executions commanded the sheriff to levy upon the property of Eli Holliday; that at the time he applied the surplus he knew the same was the individual property of relatrix. The reply also avers the subsequent modification of the Lucas decree as already set out. Demurrers were overruled to the complaint, also to the answer. Sustaining demurrers to the reply is assigned as error.

Upon the appeal mentioned in the answer in the case at bar, this court held that part of the original foreclosure decree to be void which directed that the surplus of the proceeds of the sale after paying the mortgage debt be applied on the Bartmess and Stuart judgments. *Bartmess* v. *Holliday*, 27 Ind. App. 544.

The record discloses that the superior court had jurisdiction of the subject-matter and of the parties in the original foreclosure proceedings in which the decree and order of sale were made, and that this decree and order of sale, as originally made, were in force at the time the sale of the land was made, and the surplus applied to the payment of the two judgments. The process, issued from a court having authority to issue process of that nature, was in legal form, and contained nothing to notify or fairly apprise the sheriff that it was issued without authority; that is, the process "was legal and fair upon its face," and showed jurisdiction in the court from which it was issued.

The general rule, supported by the great weight of

State, *ex rel.*, *v.* King.

authority, is that when process, in due form of law, regular upon its face, and duly authenticated from a court having jurisdiction of the subject-matter, comes into the hands of a ministerial officer, his duty is to execute it according to its terms. He is not required to inquire into the regularity of the proceedings of the court from which it issued, and determine at his peril whether it shall be obeyed. The law constantly presumes that public officers charged with official duties have not neglected them, but have duly performed them at the proper time and in the proper manner. The efficient administration of the law depends largely upon the prompt and effectual execution of legal process. It is not compatible with the nature of ministerial offices that such an officer should stop and inquire into the legality of process placed in his hands for execution. The efficiency of process often depends upon its prompt execution, and if the officer must stop to inquire into alleged illegalities back of the process, the remedies of parties would often be obstructed or entirely defeated. His duties are ministerial, not judicial. He must execute such process according to its terms, with reasonable diligence, and out of the nature of the duties imposed upon him arises the necessity of protection to the officer. See *Thompson* v. *State, ex rel.,* 3 Ind. App. 371; *Gott* v. *Mitchell,* 7 Blackf. 270; *Miller* v. *Weida,* 41 Ind. 199; *Griffith* v. *Smith,* 22 Wis. 646, 99 Am. Dec. 90; *State* v. *McNally,* 34 Me. 210, 56 Am. Dec. 650; *Savacool* v. *Boughton,* 5 Wend. 170, 21 Am. Dec. 181; *Dunlap* v. *Hunting,* 2 Denio 643, 43 Am. Dec. 763; *Keniston* v. *Little,* 30 N. H. 318, 64 Am. Dec. 297; *Billings* v. *Russell,* 23 Pa. St. 189; 62 Am. Dec. 330; *Watson* v. *Watson,* 9 Conn. 140, 23 Am. Dec. 324; *Nowell* v. *Tripp,* 61 Me. 426, 14 Am. Rep. 572; *Erskine* v. *Hohnbach,* 14 Wall. 613, 20 L. Ed. 745; *Buck* v. *Colbath,* 3 Wall. 334, 18 L. Ed. 257; *Noland* v. *Busby,* 28 Ind. 154; *Adams* v. *Davis,* 109 Ind. 10; Mechem, Pub. Officers, §§744, 745, 768, 769; *Sandford* v. *Nichols,* 13 Mass. 286, 7 Am. Dec.

State, *ex rel.*, *v.* King.

151; *Henline* v. *Reese,* 54 Ohio St. 599, 56 Am. St. 736; *Tuttle* v. *Wilson,* 24 Ill. 553; *Housh* v. *People,* 75 Ill. 487.

In *Erskine* v. *Hohnbach, supra,* the court said: "Whatever may have been the conflict at one time, in the adjudged cases as to the extent of protection afforded to ministerial officers acting in obedience to process, or orders issued to them by tribunals or officers invested by law with authority to pass upon and determine particular facts, and render judgment thereon, it is well settled now, that if the officer or tribunal possess jurisdiction over the subject-matter upon which judgment is passed, with power to issue an order or process for the enforcement of such judgment, and the order or process issued thereon to the ministerial officer is regular on its face, showing no departure from the law, or defect of jurisdiction over the person or property affected, then, and in such cases, the order or process will give full and entire protection to the ministerial officer in its regular enforcement against any prosecution which the party aggrieved thereby may institute against him, although serious errors may have been committed by the officer or tribunal in reaching the conclusion or judgment upon which the order or process is issued."

The fact that the relatrix, on the day of and prior to the sale on the foreclosure decree, filed her petition to review the original foreclosure proceedings and caused a summons to be served upon the sheriff, did not affect the duty imposed upon him by law to execute the process then in his hands. It is true a restraining order was prayed, and in a proper case an officer might be restrained from executing process in his hands, but the necessary steps were not taken to secure a temporary restraining order, and no restraining order was ever issued. The filing of the complaint and service of summons was, in effect, simply a proceeding to review the judgment in which the foreclosure decree was rendered. The question, then, is whether the sheriff was required to take notice of the proceedings to review.

In *Gott* v. *Mitchell,* 7 Blackf. 270, a party confessed judgment before a justice of the peace without making oath as required by statute, and an execution in the usual form, not showing the want of the oath, was issued, and placed in the hands of a constable, who levied the writ upon the property of the debtor. Subsequently two writs of *fieri facias* against the debtor were issued from the circuit court and delivered to a sheriff, who levied upon the same property, and gave the constable notice that the judgment on which his execution had issued was confessed without oath, and forbade him to proceed any further, but the constable retook the property, and sold it on the execution. In the opinion the court said: "The writ was legal upon its face, and showed jurisdiction in the justice. The law is, that a writ, having these characteristics, however irregularly issued, even though there be no judgment on which to found it, is a justification to an officer acting under it. Nor did the notice, given to the defendant before he completed the execution of the writ, affect his authority. He was not bound to look beyond his process. Had he seen fit to assume the responsibility of judging for himself, whether the circumstances under which the writ issued, would have excused him for not obeying it, he might have done so; and perhaps the excuse would have been sufficient. But he was not bound to run the hazard."

In *Henline* v. *Reese,* 54 Ohio St. 599, 56 Am. St. 736, it is held that a ministerial officer, having knowledge from a source other than the writ that the court issuing it was without jurisdiction of the person, may decline to serve it, but that he may nevertheless, relying on its regularity, execute it according to its commands, and plead it in justification of his act in so doing. See *Watson* v. *Watson,* 9 Conn. 140, 23 Am. Dec. 324; *Thompson* v. *State, ex rel.,* 3 Ind. App. 371.

Moreover, as a proceeding to review a judgment has for its object the correction of some error upon the face of the

proceedings, by invoking the action of the court committing the error, it is a substitute for the remedy by appeal, and is of the same nature. Errors that may be made available in an action to review are those that may be made available on an appeal. "As a bill to review a judgment for error apparent of record," said the court in *Searle* v. *Whipperman,* 79 Ind. 425, "is in the nature of an appeal, such bill will lie without a motion to set aside the default. Each is a proceeding to review a judgment, and any question that arises upon an appeal may be reached by a bill to review, and any question that does not arise upon an appeal can not be reached by proceedings to review. In this respect they are precisely alike." See *Baker* v. *Ludlam,* 118 Ind. 87; *American Ins. Co.* v. *Gibson,* 104 Ind. 336; *Clark* v. *Hillis,* 134 Ind. 421.

It is well settled that an appeal does not necessarily stay proceedings, and that there may be an effective appeal and the right to enforce the judgment or decree appealed from still remain unimpaired. Elliott, App. Proc., §384; Ewbank's Manual, §§9, 173. And we think it must be said that the statute authorizing proceedings to review a judgment not only does not contemplate that such a proceeding will stay the judgment, but that it contemplates the contrary, by providing that, "At any time after filing the complaint, and before the final hearing, the court may, upon application of the plaintiff, stay all further proceedings on the judgment. When proceedings are stayed, the court shall direct bond and surety to be given, as in cases of appeal." §630 Burns 1901.

The sheriff had the right, unless restrained by some means known to the law, to execute the process according to its terms. There was nothing upon the face of the process to indicate that appellant's rights had not been properly protected in the foreclosure suit, and there was nothing on the face of the process indicating the relation sustained by appellant to the owner of the land. It did appear that

process was properly issued, that the suit was to foreclose a mortgage, that appellant had defaulted, and that her equity of redemption in and to the land had been barred and foreclosed. The process appeared upon its face to be such process as the court could rightfully issue. If the filing of the action to review was in and of itself sufficient notice to charge him with a liability if he proceeded to execute the process it is readily seen what delays and embarrassments might attend the business of the courts. The officer might honestly believe that certain proceedings back of the process were irregular and yet be mistaken. The nature of his duties does not require that he should run the hazard. A plain and adequate remedy was open to appellant whereby a stay of further proceedings on the original judgment and decree could have been had. It is true this court has subsequently held that the particular portion of the decree in question is void. But this is not an action to recover money had and received upon a void judgment.

Judgment affirmed.