**SANDERS, Sheriff et al. v. WAGHALTER.**
**(No. 1712.)**

(Court of Civil Appeals of Texas. Texarkana. Jan. 10, 1917. Rehearing Denied Jan. 25, 1917.)

1. COURTS ⬦121(5)—COUNTY COURT—JURISDICTIONAL AMOUNT—"INTEREST."

A suit against a sheriff for an alleged conversion of $198.70 and for $14 as damages for being deprived of the use of the principal amount, the $14 should not be treated as "interest" within the meaning of the Constitution, but as an element of damages from the alleged conversion, so that the suit was for a sum in excess of $200, exclusive of interest, and within the jurisdiction of the county court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 419, 420.

For other definitions, see Words and Phrases, First and Second Series, Interest.]

2. SHERIFFS AND CONSTABLES ⬦98(1)—EXECUTION — CONVERSION — PROTECTION BY WRIT.

Where an execution in the sheriff's hands when the money was paid to him was in due form of law, regular upon its face, and duly authenticated from a court having jurisdiction of the subject-matter of the suit, resulting in the judgment on which it was issued, it was the right and duty of the sheriff to collect the amount of the writ, and, having collected it, to pay it over to the execution creditor.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 143–145.]

3. SHERIFFS AND CONSTABLES ⬦98(2)—EXECUTION — PROTECTION BY WRIT — KNOWLEDGE OF FACTS.

A sheriff may safely obey a writ of execution fair and regular on its face, and is not bound to judge of it by facts within his knowledge which may be supposed to invalidate it.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 143, 144, 146–148.]

4. SHERIFFS AND CONSTABLES ⬦94—PROTECTION BY WRIT—CONVERSION—RECOVERY.

The fact that a sheriff, having a due and regular writ of execution, promised to hold the money paid to him until the execution debtor could get judgment and execution corrected did not authorize a recovery by the successor to the rights of the execution debtor, where the money was not paid until the return day of the execution, and was paid then to prevent the sheriff from levying on the property of the sureties on the execution debtor's bond.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 126, 222, 223.]

Appeal from Harrison County Court; Geo. L. Huffman, Judge.

Action by A. Waghalter against John C. Sanders, Sheriff, and others. Judgment for plaintiff, and defendants appeal. Reversed, and judgment rendered that plaintiff take nothing by his suit.

October 3, 1913, the State Bank of Marshall, having a judgment against appellee, had an execution issued thereon for $481.80 and interest from September 23, 1913, at the rate of 10 per cent. per annum; that being the part of the judgment then unpaid. On the day it was issued the execution was levied on a stock of goods as the property of appellee. Included in the stock were certain shoes, valued at $300, which one McConkin

claimed to own, and for which he filed a claimant's oath and bond to try the right of property therein. The other portion of the stock of goods was sold as directed by the writ, the sheriff receiving therefor $400, $23.70 of which he applied to the payment of court costs, and the remainder of which he paid to the bank, as was shown by his return on the execution made October 16, 1913. The right of property suit between the bank and McConkin was tried April 9, 1914, and resulted in a judgment which, after reciting that:

"The issue between plaintiff and defendant was one of trial of right of property to 196 pairs of Peters shoes, which property was levied on by plaintiff by a writ of execution on the 3d day of October, 1913, and recovered with a claim bond from plaintiff by defendant on the 5th day of October, 1913, and the court after hearing all the evidence and argument of counsel is of the opinion that the plaintiff, the State Bank of Marshall, should recover of defendant, W. N. McConkin, the full amount sued for"

—concluded as follows:

"It is therefore the judgment of this court that the plaintiff, the State Bank of Marshall, do have and recover of the defendant W. N. McConkin, P. G. Whaley, M. M. O'Banion, O. M. Peden, and Henry Stein, sureties on defendant's claim bond, the sum of $300, with 6 per cent. interest from the 5th day of October, 1913, and all costs of this suit, for all of which let execution issue."

June 23, 1914, an execution, returnable in 90 days, was issued on the judgment set out above, for the amount thereof, and placed in the hands of the sheriff. September 23, 1914, the return day of the execution, McConkin paid to the sheriff $317.40, the amount, principal, and interest thereof. The sheriff, on the day he received same, paid the $317.40 to the bank. On McConkin's motion filed September 30, 1914, the court, on October 9, 1914, made and had entered on the minutes an order by which he attempted to "correct" the judgment he had rendered and had entered April 9, 1914, in the trial of the right of property suit. In this order it was recited that it appeared that said judgment of April 9, 1914, "fails to dispose of all the issues in this cause, and that said judgment was not entered correctly,"

and it is further recited that at the time of the levy of the execution on the shoes they were

"the property of said Waghalter and subject to sale in order to satisfy said execution; that the value of said shoes is the sum of $300; that the amount of plaintiff's claim, the amount due and unpaid on said execution, as shown by the execution and return thereon, is the sum of $113.75."

After adjudging that the bank recovered of McConkin and his said sureties the sum of $300 and 6 per cent. interest from October 5, 1913, and costs, the order concludes as follows:

"It is further ordered, adjudged and decreed by the court that the amount of plaintiff's claim be and is hereby established at the sum of one

hundred thirteen dollars ($113.75) and seventy-five cents, and that plaintiff do have execution for said sum of $113.75, with 6 per cent. interest thereon from date, together with costs of suit. And it is further ordered, adjudged, and decreed that the excess of said judgment for the sum of $300, after satisfying the amount of plaintiff's claim for the sum of $113.75, interest thereon and costs of suit, shall inure to the benefit of any person or persons who shall show superior right or title thereto as against the defendant, W. N. McConkin, that execution do issue in accordance with the terms hereof. It is further ordered that this judgment shall not be considered as an adjudication of any matters or rights accruing after the date of entry of said original judgment; that is, April 9, 1914."

This suit was by appellee, who by transfer from McConkin had acquired the right, if any, the latter had to maintain it, against Sanders, the sheriff, and the sureties on his bond as such. In his petition appellee, among other things, alleged that the bank caused an execution to be issued on the judgment rendered in the trial of the right of property suit, and placed the same in the hands of the sheriff,

"and thereafter on the 23d day of September, 1914, the said Sanders collected from said McConkin the sum of $317.40 and all costs of suit, in full settlement of said execution. Said shoes and the proceeds thereof were the property of plaintiff, and plaintiff was entitled to receive said money from Sanders after the payment of the unpaid balance on the State Bank's judgment against plaintiff, which said balance at the time defendant Sanders collected said money from McConkin was $118.70, leaving a balance of 198.70, which said Sanders should have paid over to the plaintiff herein.

"Plaintiff on the 23d day of September, 1914, and thereafter repeatedly made demand upon said Sanders for the payment of said sum, and said Sanders has refused to pay plaintiff the same, or any part thereof, and wrongfully and without cause, on the 23d day of September, 1914, converted the same to his own use and benefit.

"Each and all of the acts of said Sanders as herein alleged were done by him in his official capacity as sheriff of Harrison county, Tex., and while the other defendants were sureties on his official bond as such sheriff, and the other defendants are each and all liable for the unlawful and wrongful acts of the defendant Sanders.

"The plaintiff avers that by reason of the unlawful acts and conduct of the defendant Sanders as herein alleged plaintiff has been damaged in the said sum of $198.70, and by reason of being deprived of said sum of $198.70 by said unlawful acts and conduct of said Sanders plaintiff has suffered further damages in the sum of 6 per cent. per annum interest on said sum of $198.70 from September 23, 1914, to the filing of this petition, making in all the sum of $212.70 plaintiff has been damaged.

"Plaintiff prays that he have judgment against the defendants jointly and severally for said damages in. the sum of $212.70, together with interest on said sum of $198.70 from this date until final judgment, and he prays for costs of suit and for general relief."

The witness O'Banion testified:

"I was the attorney for McConkin in the trial of right of property suit in the county court between McConkin and the State Bank. After the execution was issued on the judgment in that case, on the 23d of September, 1914, Sheriff Jno. C. Sanders notified me that he was going to levy on the property of the sureties on McConkin's bond. I asked Sanders if he had an indemnity bond, and he said no, and I told him that he had better get one, as the judgment and execution were not correct. I asked him to hold up the execution until I could get the judgment and execution corrected, but he said that he had to make his return on it that day. Sanders said that he knew that the execution was not correct, as the bank was not entitled to all that money. I again talked with Sanders about the execution and judgment, telling him that I could not get them corrected until Judge Huffman returned from the lake. I asked Sanders if I paid him the money if he would hold it until Judge Huffman returned from the lake so that I could get the judgment and execution corrected, and he said that he would do so. He said that he would not pay the money out at all until I had a chance to correct the matter.

"I also talked with Mr. J. B. Henderson, office deputy for Mr. Sanders, about the execution and judgment being incorrect, and he said that the bank was not entitled to all that money, and that he knew that it was not correct. He also said that they would hold the money and not pay it out until I could get an opportunity to correct the judgment and execution. I paid the costs and the $317.40 over to Mr. Henderson, with this understanding, and to prevent the sheriff from levying on the property of the sureties on McConkin's bond."

The witness Henderson testified:

"In September 14, 1914, I was chief deputy sheriff under J. C. Sanders, and had charge of the office. I held for collection an execution against McConkin and sureties in the trial of right of property case. Mr. O'Banion came to the office on September 23, 1914, and paid me the amount claimed in the execution, which was about $317.40, and costs. After he paid me the money I started to the bank with it, and met Mr. O'Banion in the door of the sheriff's office, and he then asked me if I would not hold up the paying over of the money for a while to see if he could not get some relief. He said that the bank was entitled to only the balance remaining unpaid on its judgment against Waghalter. I told him no, that the execution was in favor of the bank for the whole amount, and I would have to pay it out to the bank. This was the last day of the life of the execution, and I could not hold the matter up."

Appellant Sanders testified:

"I was sheriff of Harrison county, Tex., in the years 1913 and 1914. The execution issued in the case of State Bank of Marshall against A. Waghalter and the execution in favor of the State Bank of Marshall against McConkin in the trial of right of property suit were placed in my hands as sheriff of Harrison county. I called on Mr. O'Banion several times to get him to settle the McConkin execution. He did not settle it with me, but wanted more time, and I think he said there was something wrong with the judgment. I don't remember that I promised him to hold the execution up. I suppose that I must have known that O'Banion was claiming that the bank was not entitled to all the money."

The trial resulted in a judgment in appellee's favor against the sheriff and the sureties on his official bond for the sum of $217.07.

F. H. Prendergast, of Marshall, for appellants. Cary Abney and M. M. O'Banion, both of Marshall, for appellee.

WILLSON, C. J. (after stating the facts as above). In disposing of this appeal it is necessary to refer to only two of the contentions made by appellant.

[1] One of the two is that the court below was without jurisdiction of the suit, because it was for a sum which did not exceed $200, exclusive of $14, which it is asserted was claimed as interest on the $198.70. If it appeared that the recovery sought of the $14 was for interest allowed by the statute, the contention should be sustained. But it will be seen by reference to appellee's pleadings, set out in the statement above, that his suit was for damages for an alleged conversion by the sheriff of the $198.70, and that he did not seek a recovery of the $14 as interest allowed by the statute, but as damages resulting to him from being deprived of the use of the $198.70. Therefore, in determining the question made as to the jurisdiction of the court below, the $14 sued for should not be treated as "interest" within the meaning of the Constitution, but as an element of damages suffered by appellee as a result of the alleged conversion by the sheriff of the $198.70. So treating it, the suit was for a sum in excess of $200, exclusive of interest, and the court below was not without power to hear and determine it. Baker v. Smelser, 88 Tex. 26, 29 S. W. 377, 33 L. R. A. 163; Dwyer v. Bassett, 29 S. W. 815; Railway Co. v. Faulkner, 118 S. W. 747.

[2, 3] The other of the two contentions referred to is that it appeared that the sheriff was not guilty of a conversion as charged by appellee of the money, or any part of it, paid to him by McConkin in satisfaction of the execution. This contention should be sustained. It was not pretended in the court below, nor is it here, that the execution in the sheriff's hands at the time the money was paid to him was not, "in due form of law, regular upon its face, and duly authenticated from a court having jurisdiction of the subject-matter" of the suit, resulting in the judgment on which it was issued. State v. King, 30 Ind. App. 389, 66 N. E. 85. Such being the character of the process, the sheriff not only possessed the right, but 'it was his duty, to collect of McConkin the amount of the writ, and, having collected same, to pay it over to the bank. The fact, as testified to by the witness, O'Banion, that the sheriff knew, he declared, "that the execution was not correct, as the bank was not entitled to all that money," did not deprive the sheriff of the right conferred, nor relieve him of the duty imposed, on him by the writ in his hands. Tierney v. Frazier, 57 Tex. 437; Randall v. Rosenthal, 31 S. W. 822; State v. King, 30 Ind. App. 389, 66 N.

E. 85; Western Seed Co. v. McDonald, 5 Neb. (Unof.) 553, 99 N. W. 517; 35 Cyc. 1744, 1750; 1 Cooley on Torts, pp. 891 to 894. The rule, as stated by Judge Cooley (page 893), and recognized in Tierney v. Frazier, supra, as controlling in this state, is that:

"The officer may safely obey all process fair on its face, and is not bound to judge of it by facts within his knowledge which may be supposed to invalidate it."

[4] Nor do we think the testimony of the witness O'Banion that the sheriff promised to hold the money paid to him until McConkin "could get the judgment and execution corrected" authorized the recovery had by appellee. It did not appear in either the pleadings or the evidence that the money would not have been paid as it was by McConkin to the sheriff had the latter not made such a promise. On the contrary, it appeared that the money was not paid until the return day of the execution, and that it was paid then " to prevent the sheriff from levying on the property of the sureties on McConkin's bond."

On the facts shown by the record 'it is clear, we think, that appellee's cause of action, if any, was against the bank, and not against the sheriff and the sureties on his bond. Therefore the judgment will be reversed, and judgment will be here rendered that he take nothing by his suit.