# DAVIDSON *v.* O. & C. RAILROAD CO.

ASSIGNMENT OF ERROR ON THE GROUND OF VARIANCE between the facts alleged and those proved, must specify the grounds of objection.

EVERY MATTER WHICH WOULD HAVE BEEN ADMISSIBLE IN EVIDENCE BY WAY OF AMENDMENT to the complaint, will be deemed to have been added, or its absence waived or cured, after verdict.

RAILROAD COMPANY MUST CONSTRUCT ITS WORKS, SUCH AS DITCHES FOR DRAINING WATER, with proper skill and care, having due regard to the features of the ground over which it passes, and must keep the same in repair; and it is liable for injuries resulting to an adjoining owner of land from failing so to do, although such injuries do not happen immediately after the completion of the work.

APPEAL from Marion County.　The facts are stated in the opinion.

*Dolph & Simon,* for the appellant.

There being no allegation in the complaint of ownership or possession of the lands described in the complaint, by the plaintiff at the time when the wrongful acts of the defendant are alleged to have been committed, the court erred in overruling the defendant's objections and permitting the testimony to be given as to plaintiff's ownership, possession and damage.　(Greenleaf on Evidence, Vol. 2, § 613; Estees Pl. sec. 42 and 43; *Payne & Dewey* v. *Treadwell,* 16 Cal., 248; *Henry* v. *Everts,* 30 Cal., 425.)　It is the first rule governing the production of evidence, that "*the evidence*

*must correspond with the allegations and be confined to the point in issue.*" (First Greenleaf on Evidence, section 51; Civil Code of Oregon, section 694.)

The evidence in relation to the dam and embankment or levee, constructed by Thomas Cross and others, as stated in the bill of exceptions, tended to show that this dam or levee, at the time of freshets, turned the water out of Mill creek over the surface of the adjacent land from which it found its way, by the natural drainage of the country, into the ditches of the defendant and was thereby thrown on the land of the plaintiff.

The whole tenor of the instructions given to the jury in regard to this dam was that, although the defendant's railroad and ditches had been at first properly constructed, so that water flowing through them would do no damage to the plaintiff's land, the defendant was bound to take care of the water, afterwards thrown into its ditches over the adjacent country by the unlawful damming of Mill creek, and the construction of the levee mentioned in the testimony, by the defendant Cross. (*Campbell* v. *R. R. and A. W. & M. Co.* 35 Cal., 683; *Richardson* v. *Kier,* 34 Cal., 63.)

*Bonham & Ramsey,* for the respondent.

Counsel for appellant claim in their sixth and last assignment of error, that the plaintiff does not show by his complaint that he was the owner of the land which he claims was damaged, prior to the day when he commenced this action. We do not think that any person who is not extremely technical and hypercritical would come to that conclusion from reading the complaint. But if it should be found that plaintiff's ownership of the land in question is defectively stated in his complaint, it is such a defect as would be cured by verdict. (Bliss on Code Pleadings, secs. 438–442;

9 Oregon, 325; 16 Cal., 567; 9 Cushing, 131; 17 Mass., 228; 17 Ind., 115; 33 Mo., 386; 36 Mo., 35; 39 Mo., 287.) In support of our theories as to the law applicable to the instructions refused by the court, and those given, to which exception was taken by appellant's counsel, we submit the following authorities: (33 Pa. State, 73, 79; 56 Pa. State, 445 and 448; 30 Vermont, 610 and 613; 8 Bush, [Ky.] 404 and 409; 10 Cushing, 387 and 388; 35 N. H., 569 and 571; 57 Ill., 28 and 30; 68 Ill., 167 and 168; 21 Iowa, 160 and 165.)

By the Court, LORD, J.:

This was an action for damages alleged to have been occasioned to plaintiff's land by the neglect of the defendant. The first error assigned is a variance between the facts alleged and proved by the plaintiff. This variance is claimed to consist in the want of an allegation of previous possession, to make the complaint conform to the facts proved. While it would have been easy to have avoided the criticism suggested, by a more specific allegation of previous possession, yet we think, construing the pleading within the meaning of section 83 of the civil code, such previous possession is clearly indicated, and in fact alleged. It is the lands of the plaintiff during the past six years which have been injured by the alleged negligent acts of the defendant. But if this view were unsatisfactory, the form in which the objection comes to this evidence is not available—it does not specify any ground of objection.

We must consider, then, the question of variance between the facts alleged and proved, as. if none had been made. Under the general power of amendment provided by section 99 of the civil code, with the duty imposed upon the court by section 104, to disregard errors and defects not affecting

the substantial rights of the parties, no judgment will be reversed because of any defect so amendable. It is not doubted under these sections but what the plaintiff might have amended his pleading so as to make it conform to the facts proved. The rule in such case is, that every matter which would have been admissible in evidence by way of amendment to the complaint, will be deemed to have been added, or its absence waived or cured, after verdict: Bliss on Code Pl., secs. 438–442; Pomeroy's Remedies, secs. 435, 566, 576. The reason of this rule is obvious. When made at the trial, there is opportunity for removing it at once.

The next alleged ground of error is in refusing to give the instructions to the jury asked for by the defendant, and in giving the instructions excepted to by the defendant. These matters may be considered together. The point mainly to be noticed, and upon which the defendant chiefly relies, was that the court, by the instructions, held the defendant liable on a different state of facts than was alleged in the complaint. The gist of the action is that the defendant, in the construction of its road-bed across plaintiff's land, and along the line of its road, so carelessly and negligently constructed its ditches and drains above and below and across plaintiff's lands, as to unnecessarily and wrongfully turn streams of water out of their natural channels into the line of said railroad, whereby the lands of the plaintiff were overflowed, to his damage, etc.

Without incumbering this opinion with the substance of the evidence offered by the plaintiff, it is sufficient for present purposes to say it tended to sustain the allegations of his complaint, although it appeared by such evidence that no injury by overflow had occurred to the lands of the plaintiff for several years after such ditches had been dug. To nega-

tive and obviate the effect of this evidence, to show that other causes than those alleged had contributed to increase the volume of water flowing in the ditches, the defendant introduced evidence tending to show that Thomas Cross and others, whose lands bordered along and sloped toward the line of the road, constructed dams and ditches for the purpose of draining the surface-water lying upon their lands into these ditches of the railroad, which materially contributed to produce the result or overflow complained of. Upon this state of the evidence, the defendant claimed exemption from liability by the instruction asked, upon two grounds: first, that if the water which caused the ditches to overflow and flood the land of the plaintiff was occasioned by the ditches of other persons drained into the company's ditches, the defendant was not liable; and, second, that if the ditches were originally properly dug, and for seven or eight years no damage was caused by them from overflows, and that if within the last four years the ditches have been cut deeper and wider by the action of Mill creek during excessive floods, whereby the lands of the plaintiff have been overflowed, the defendant is not liable.

Probably the best reasons why these instructions were not given, are furnished by those portions of the charge, although excepted to, applicable to their objections. The court says: "If in the construction of these ditches the defendants cross a natural water-course, it is their duty to let this water-course under their road, and if they do not, they must take care of the water so that it will not result in injury to persons along the track who are below. They would not have a right to turn water in this ditch and let it come along the track and injure other persons, because it was their duty to let it go down the natural channel; and whatever water comes into their ditch, it is their duty to take care

of it in an ordinary workmanlike manner so it will pass away and not injure the owners of land along the ditch.

If they cause more water to come from Mill creek, or these swales that have been spoken of, than naturally belongs there, they ought to have taken care of that water, and seen that it did not do damage. It would be carelessness to let such water flow down there and do damage.

This is a question raised about the water coming from Mill creek by the action of Mr. Cross, by which it is claimed more water is turned there out of Mill creek than would naturally flow there. This is a question of fact for the jury. If it came down to these ditches and caused them to be worn out—to become larger at the upper end, and let in a larger amount of water, and they became permanently enlarged in that way, so that more water came down the ditch— this ditch belonged to the company, and it was their duty to take care of that water. But if these ditches had been deepened by it, so as to carry additional water, it was the duty of the company to take care of it whenever it got there, or became a permanent thing. It is their duty to take care of the race. Davidson had no right to repair this race, and it is their duty to do it.

If any other law prevailed, a man might be completely ruined in his property by a nuisance brought there by another person's ditch. So it is the duty of the parties owning these ditches that run down on each side of their road, to control the water that comes through these ditches excepting when it comes in an extraordinary flood.

The evidence showed the road-bed was made in part by excavations along the line which formed these ditches, which approaches within a few feet of Mill creek, by reason whereof a portion of the water of that creek during the wet season, instead of flowing in its channel, was diverted in-

to these ditches, and although it produced an increased flow of water in the ditches, the injury did not make its self apparent until some time afterwards.    It thus appears that no precaution was taken at the time or since to prevent the necessary consequence of said overflows from the creek into the ditches, which, by gradually growing larger and deeper, contributed to produce a greater volume of water than the ditches could carry, with the result complained of.    It is the plain duty of a railroad company to construct its works with proper skill and care, and with due regard to the features of the ground over which it passes: *Pittsburg R. R. Co.* v. *Chicago R. R. Co.*, 56 Pa. St. 445.    The fact that the injury from turning these waters into the ditches did not occur immediately, furnished no justification or exemption from liability, and such was the effect of the instruction.    The court even goes to the extent of saying that although water from the creek and swales may have been unnecessarily diverted into the ditches, the plaintiff could not complain until some injury resulted from it.    Reference to the instruction in respect to other parties draining their land in these ditches, is alike answered by the instruction, and needs no further comment.

The judgment must be affirmed.