Argued March 26, modified May 21, 1918.

# TITLE INSURANCE & TRUST CO. *v.* NORTHWESTERN LONG DISTANCE TELEPHONE CO.

## (173 Pac. 251.)

**Judgment—Pleading—Necessity.**

1. A judgment cannot be of any force without a pleading to support it.

**Setoff and Counterclaim—Conversion—"Counterclaim."**

2. Under Section 401, L. O. L., providing a counterclaim in equity shall be one upon which suit might be maintained by defendant against plaintiff, and in addition to the cases specified in Section 74 it is sufficient if it be connected with the subject of the suit, in a suit to foreclose a deed of trust, plaintiff's conversion of cash and

bonds of defendant after beginning of suit cannot be interposed as a counterclaim.

  [As to general principles governing setoff in equity, see note in 47 Am. St. Rep. 578.]

**Courts—Jurisdiction—Property in Other States.**

3.  The jurisdiction of a state court does not extend to property which is actually beyond its boundaries, and the situs of a chose in action is ordinarily at the residence of the creditor or holder thereof.

**Pleading—Defects—Cured by Verdict.**

4.  Although a defective statement of a good cause of action may be cured by verdict, an utter absence of averment thereof cannot be so cured.

**Corporations—Foreclosure of Trust Deed—Defenses.**

5.  In a suit to foreclose a corporate trust deed for default in interest, it is no defense that the trustee, acting with the corporation's directors, so manipulated the corporate affairs that the corporation was unable to pay the interest; for a foreclosure proceeding is not one in which to redress the grievances of a minority stockholder in affairs not directly connected with the transaction of floating and securing the loan involved.

**Corporations—Foreclosure of Trust Deed—Compensation of Trustee.**

6.  Where a corporate trustee assumes control of the board of directors of its *cestui que trust*, and through them conducts the *cestui's* affairs to the latter's loss and its own gain, it cannot be awarded compensation for foreclosing deed of trust against the latter.

From Multnomah: WILLIAM N. GATENS, Judge.

In Banc.

The plaintiff, Title Insurance & Trust Company, the Northwestern Long Distance Telephone Company and the National Securities Company are all corporations organized and existing under the laws of California with their home offices at Los Angeles in that state. The Home Telephone and Telegraph Company is an Oregon corporation whose principal place of business is in Portland. The Home Telephone Company of Puget Sound is a Washington corporation with headquarters at Tacoma. For brevity of expression the plaintiff will be designated as the Title Company, the Northwestern Long Distance Telephone Company, the Northwestern Company, the Home Telephone and

Telegraph Company of Portland, the Portland Company, and the Home Telephone Company of Puget Sound, the Washington Company.

On March 15, 1906, the Northwestern Company issued its bonds in the sum of $1,500,000 in various denominations to run for thirty years with interest at 5 per cent per annum, payable semi-annually, according to coupons attached thereto providing substantially, among other things, that if default should be made in payment of the interest the whole sum might become due and payable under certain conditions to be more fully stated. To secure those obligations the Northwestern Company executed and delivered to the Title Company a trust deed conveying to the latter in trust for the holders of the bonds the property of the former described as

"all and singular the real and personal property, franchises, rights, privileges, telephone and telegraph lines, extensions, branches, additions, poles, wires, cross-arms, insulators, conduits, cables, batteries, switchboards, electric apparatus and appliances, and all tools, implements, material, machinery and all other property of every kind and nature and wherever the same may be situate, now owned or belonging to the party of the first part, or which shall or may hereafter belong to, be owned or acquired by the party of the first part during the life of said bonds, or any of them, together with all and singular the tenements, hereditaments and appurtenances thereto belonging or in any wise pertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof."

Various procedures for declaring a default in performance of the conditions of the trust deed are specified therein, but the one relied upon in this suit is substantially that in case default should be made in

payment of the interest upon the bonds and should continue for a period of six months, the trustee, being thereunto requested in writing by the holders of the majority in par value of the bonds then outstanding, should foreclose the trust deed by suit culminating in a sale of the property from the proceeds of which should be discharged the sums due upon the principal and interest of the bonds, the taxes and other assessments, as well as compensation for the services of the trustee "in such amount as shall by the court be deemed just," the overplus, if any, to be paid to the Northwestern Company, its successors or assigns. Claiming that default had been made in the payment of interest and that it had been properly instructed so to do, the Title Company instituted this suit November 28, 1911, in the Circuit Court for Multnomah County to foreclose the trust deed, claiming $10,000 as an attorney fee and a like amount as a fee for its own services. The Northwestern Company itself filed an answer prepared by the counsel for the plaintiff admitting all the allegations of the complaint, excepting only the amount claimed for attorneys' fees and trustee's fees and averring that the sum of $5,000 in each instance was sufficient to be allowed for those purposes.

Later on, alleging himself to be the owner and holder of 950 shares of the capital stock of the Northwestern Company of the par value of $95,000, and of $800 face value of its bonds, besides a judgment of $5,000 against it upon which execution had been issued and returned unsatisfied, Charles E. Sumner intervened by leave of the court and put in an answer and cross-complaint stating sundry instances of misconduct of the directors of the Northwestern Company resulting, as he claims,

in a depletion of its treasury and the happening of the default upon which this suit is based. On his prayer, the court appointed a receiver of all the property, assets, franchises, rights and privileges, including business and goodwill, of the defendant, the Northwestern Long Distance Telephone Company, of every kind, nature and description, situate in the State of Oregon, empowering him to institute all necessary actions, suits and proceedings to obtain possession thereof and to collect and recover any debt, or demand due to the Northwestern Company from any person or corporation wheresoever they might reside and to take any proper or necessary action to prevent the foreclosure of the mortgage in the instant suit. In due time the receiver filed an amended answer challenging the complaint in material particulars and affirmatively stating in substance that the directorates of the plaintiff, the Title Company, the Northwestern Company and the National Securities Company were controlled by and in the interest of certain persons named; and that by means of these interlocking boards, various transactions were carried on in dealing with the stock and securities of the Northwestern Company to the financial detriment of the latter and to their gain, resulting in the company's failure to meet its interest charges and bringing about the default upon which the suit is based.

Among other things, the receiver alleged that by the laws of the State of California, where these last-named corporations have their domicile, the directors of such institutions are forbidden to contract any debts beyond the subscribed capital of the concern they represent under penalty of becoming personally liable in their individual capacity, jointly and severally, to the creditors of the corporation to the amount of the debt

contracted without relief from any statute of limitations. The existence of such a law is admitted by all parties and it is contended by the receiver in his answer in substance that the directors of the Northwestern Company caused an issue of its bonds in excess of its subscribed capital stock in an amount exceeding $750,000, and manipulated its affairs with a view of protecting themselves in their malfeasance, and in so doing wrecked the company. Reduced to its lowest terms this is the essence of an exceedingly prolix and complicated answer filed by the receiver. This new matter was traversed by the reply. The Portland Company intervened setting up a contract with the Northwestern Company for interchange of telephone service and prayed that whatever decree was made the agreement should be protected. It seems that no particular opposition was made to that prayer, although that cross-bill in intervention was dismissed by the final decree, together with the cross-complaint of Charles E. Sumner.

It came out in testimony that as a result of investments made by the Northwestern Company through its directors in securities of the Portland Company and the Washington Company, there had been collected and placed in the hands of the Title Company in Los Angeles upwards of $80,000 in cash and $57,500 par value bonds of the Portland Company, and that after this suit was commenced in Oregon a proceeding was instituted in the Superior Court at Los Angeles to partition and distribute that money and those bonds among the parties claiming them. The theory of that suit was that the money and bonds mentioned constituted the avails of property for which the unlawful surplus of bonds in the sum of $750,000 had been issued in excess

of the subscribed stock of the Northwestern Company; and that the parties who procured this wrongful issue having returned it to the Northwestern Company for cancellation they were entitled to the property for which the issue had been exchanged. The plaintiff here was made party to that suit and consented to a decree distributing the property there in question. It is stated in the receiver's application to the Circuit Court of Multnomah County that the money and bonds involved in the Los Angeles suit were in custody of the Title Company in that city. No charge is made in the pleadings of the receiver that the Title Company had converted that property to its own use. The Circuit Court of Multnomah County decreed a foreclosure of the trust deed described in the complaint directing the application of the proceeds of sale to the payment of the legitimate $750,000 of the Northwestern Company's bonds, being one half of the original $1,500,000 mentioned in the trust deed, gave a personal judgment against the Title Company for $131,354.39, omitted all allowance for attorneys' fees or compensation for it as trustee and ordered a sale of the property for the satisfaction of the decree. The Title Company alone appealed, no other party making any question as to the correctness of the determination of the Circuit Court.

MODIFIED.

For appellant there was a brief over the name of *Messrs. Fenton, Day, Hampson & Fenton,* with an oral argument by *Mr. Alfred A. Hampson.*

For respondent, Northwestern Long Distance Telephone Company, there was a brief submitted by *Messrs. Grosscup & Morrow.*

For intervener, Home Telephone & Telegraph Company, there was a brief presented by *Mr. Richard W. Montague.*

For intervener, Charles E. Sumner, there was a brief over the name of *Mr. Hollis S. Wilson.*

For intervener and respondent, John B. Coffey, as receiver of the Northwestern Long Distance Telephone Company, there was a brief over the name of *Messrs. Fulton & Bowerman,* with an oral argument by *Mr. Jay Bowerman.*

BURNETT, J.—The principal question to be determined is the validity of the personal judgment rendered against the plaintiff. The only thing to which this adjudication can be attributed is the effect of the decree of the California court admitted in evidence and which distributed the cash and bonds in custody of the plaintiff in Los Angeles. The theory advanced in the argument in support of the decision attacked by the instant appeal is that the consent of the plaintiff to the California decree amounted to a conversion of the property, justifying the Oregon court in casting the plaintiff in judgment here.

1, 2. The principal objection to the correctness of that conclusion of the Circuit Court is that it is not averred in the answer of the receiver that the plaintiff committed any act of conversion. A judgment cannot be of any force without a pleading to support it. Moreover, such a charge, if made, would not be a defense or counterclaim in this suit for the foreclosure of the trust deed. It is said in Section 401, L. O. L., treating of proceedings in equity:

88 Or.—43

"The counterclaim of the defendant shall be one upon which a suit might be maintained by the defendant against the plaintiff in the suit; and in addition to the cases specified in the subdivisions of Section 74, it is sufficient if it be connected with the subject of the suit."

The provisions of Section 74 require that a counterclaim must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

(1) "A cause of action arising out of the contract, or transaction set forth in the complaint, as the foundation of the plaintiff's claim; and (2) In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action."

The wrongful conversion of property is a tort for which an action at law and not a suit can be maintained. The transaction involved in this suit is the execution of the trust deed for the purpose of securing the bonds of the Northwestern Company. The alleged conversion of the cash and bonds upon which the instant judgment seems to be based did not arise out of the negotiation of the loan or the execution of the trust deed securing the same. It was, if anything, a separate and independent tort not arising on any contract and confessedly, it occurred, if at all, long after the commencement of this suit so that in any view of the case it is not a proper counterclaim.

A great deal is said in the receiver's brief about the action of the California court being in derogation of the jurisdiction of the Circuit Court of Multnomah County, and that the latter tribunal having assumed jurisdiction of the subject of foreclosing the trust deed,

was entitled to retain it even as against the California court dealing with property actually held in that state. The authorities cited in support of this proposition do not in our judgment uphold the receiver's contention in the instant case. The action of the California court is not in derogation of the jurisdiction of the Oregon court unless the latter tribunal had jurisdiction of the property involved in the suit in the sister state. If, in fact, the Oregon court had jurisdiction of the property, there is nothing in the pleadings in the case at bar to prevent making a decree of foreclosure upon that as well as any other property subject to the mortgage. If our own state court did not have jurisdiction of the property in Los Angeles, there is no basis for rendering a personal judgment against the plaintiff respecting the disposition of that property, especially in the absence of a charge of conversion. *Cohen* v. *Solomon,* 66 Fed. 411, cited by the receiver, was an instance where a suit to foreclose a mortgage upon real property had been commenced in a federal court and it was held there that while that suit was pending, a state court could not entertain a proceeding to quiet title to the same property. The reason for that decision was that the federal court had first taken into its control the *res* involved in the litigation which included the authority to hear and determine all claims of title concerning it, thus preventing any other tribunal from interfering with it. In *Gates* v. *Bucki,* 53 Fed. 961 (4 C. C. A. 116), substantially the same principle was announced to the effect that when by the issue and levy of process or the filing of a bill in equity property, either real or personal, is brought *in custodia legis,* the control and jurisdiction over the same is exclusively with the court which first acquired legal possession thereof. The receiver also cites *Mutual Life Ins. Co.*

v. *Brune's Assignee,* 96 U. S. 588 (24 L. Ed. 737). In that case the Insurance Company had issued policies on the life of one Barry in favor of his wife. Later they were assigned to Brune who in turn transferred them to Harris. Then the insured died and his wife instituted suit in a New York court against the Insurance Company and both assignees, claiming ownership of the policies in herself. Harris brought an action at law in the United States Circuit Court in Maryland to recover on the policies as assignee. The Insurance Company sued in the latter tribunal to restrain the assignee from prosecuting this action, claiming that Mrs. Barry might recover in the New York case and Harris in the federal court of Maryland resulting in the Insurance Company being compelled to pay the amount of the policies twice. In disposing of the injunction suit the court said:

"This, we think, was not sufficient to justify the injunction for which the appellant prayed. At law the pendency of a former action between the same parties for the same cause is pleadable in abatement to a second action because the latter is regarded as vexatious. But the former action must be in a domestic court; that is, in a court of the state in which the second action has been brought," citing authorities.

Under the doctrine enunciated in the excerpt from this opinion of the United States Supreme Court it is not apparent how the suit pending in the Oregon court, not being in a tribunal domestic to California, could prevent a decree of the court there, respecting property which the receiver says was in that state.

3. It is elementary that the jurisdiction of a state court does not extend to property which is actually beyond its boundaries. The *situs* of a chose in action is ordinarily at the residence of the creditor or holder

thereof.  The principle was applied by this court in
*Poppleton* v. *Yamhill County,* 8 Or. 337.  In that case
Poppleton was a resident of the county named.  Called
upon before the county board of equalization to show
why his list of assessable property should not be
amended by adding thereto sundry promissory notes
which the county authorities claimed he owned, he an-
swered that he had indorsed some twenty thousand dol-
lars worth of such commercial paper to parties residing
in Multnomah County as collateral security for a loan of
$1,000 which he had borrowed from them and urged that
the notes were thus beyond the jurisdiction of the Yam-
hill authorities.  This court held in substance that if
the notes were indorsed in good faith to the residents of
the other county they would be taxable there because
held there; but that if the indorsement was fraudulent
for the purpose of evading taxation in Yamhill County
where the owner lived, they would be taxable in the
latter county.  The effect of this is that the residence
of the owner and holder of such an instrument is the
*situs* of the property.  The same principle was fol-
lowed in *Callender Nav. Co.* v. *Pomeroy,* 61 Or. 343
(122 Pac. 758).  There the matter involved was
whether  vessels owned by a Washington corporation,
but enrolled at the Port of Astoria and used in inter-
state commerce between Washington and Oregon, were
taxable at Astoria, in Clatsop County, where the cor-
poration maintained an office, and the boats were
docked and from which as a basis of operations they
engaged in such trade.  It was there decided that
under those circumstances the home of the corporate
owner being in Washington gave the boats a *situs* in
that state exempting them from the jurisdiction of Ore-
gon for purposes of taxation.  The principle an-
nounced in the Poppleton and Callender cases is

controlling here so far as the property in Los Angeles is concerned. It was actually in the State of California. Litigation concerning it must of necessity be conducted in that state and this seems to have been the theory adopted by the receiver and pervading the order appointing him. It appears in the record before us that he applied to the Circuit Court for a continuance of the present case to allow him to appear in the Los Angeles court and declared in his affidavit accompanying his motion that he had filed an answer in that litigation. It is plain, therefore, that the transactions of the California court cannot effect anything to the detriment of the plaintiff in this suit and that the judgment rendered against it is erroneous and must be reversed.

4, 5. The receiver urges that this judgment against the Title Company is a matter which could have been litigated under an amendment of the pleadings that the absence of sufficient averment in the answer of the receiver is cured by the judgment itself, and that

"Where the defendant has established his right to recover by evidence, to the introduction of which no objection was made in the lower court, or where evidence is introduced by the plaintiff which supports a right to recover in the defendant, then, in either case after judgment for the defendant, the plaintiff cannot on an appeal secure a reversal because of any imperfection in the pleadings."

In support of his contention he cites *Davidson* v. *Oregon & C. R. R. Co.*, 11 Or. 136 (1 Pac. 705); *Roseburg Ry. Co.* v. *Nosler*, 37 Or. 299 (60 Pac. 904), and other similar cases. These precedents allude to instances where there is merely a defective statement of a good cause of action which is cured after verdict. They are not authority for giving a judgment where there is an

utter absence of averment to support it.   Moreover, as we have shown, the transaction culminating in the Los Angeles decree was not cognizable in this suit as a defense or counterclaim.   The question here is whether the mortgage shall be foreclosed.   It is established by the testimony virtually *pro confesso* that the interest was in fact not paid, thus entailing a default under the terms of the trust deed.   Bonds were issued in the sum of $750,000, the validity of which is unchallenged and they are in the hands of *bona fide* holders.   At least there is no effort by averment or otherwise to impeach the title to those obligations or their integrity.   It is no answer to their owners or to the plaintiff, litigating as their representative, for the mortgagor or its receiver in its stead, to say: "It is true that I have not paid the interest and am in default; but the reason is that my trustee, acting with my directors, has so manipulated my affairs that I am unable to pay."   The default being thus confessed it is not avoided by the other matters stated and the duty to pay is not thus obviated or postponed.   If in very truth there had been no default on the part of the mortgagor or in the performance of its covenants, that fact could have been shown in defense of this suit; but a foreclosure proceeding is not one in which to redress the grievances of a minority stockholder in affairs not directly connected with the transaction of floating and securing the loan involved.   In short, the debtor cannot pay his obligation to his creditors with choses in action which he has against his own representatives.

6. It remains to consider whether the Circuit Court was justified in refusing compensation to the trustee. The thirtieth finding of the Circuit Court is this:

"By reason of the fact that the plaintiff herein while acting as trustee under the trust deed described in the

complaint, violated its duty as such trustee, and by reason of the several transactions described in these findings of fact it and its associates made large profits unlawfully and at the expense and to the loss of said defendant, Northwestern Long Distance Telephone Company, the court finds that said trustee is not entitled to receive any compensation for bringing this suit.''

The question of attorneys' fees is eliminated by waiver of counsel for the plaintiff in its brief. As to its compensation the trustee appears before a court of chancery claiming relief personal to itself. To that extent it is litigating in its own interests and must occupy the position of any other suitor seeking equitable relief. It is quite apparent from the testimony that the plaintiff by its directors, some of whom were at once in like authority not only in the Northwestern Company, but also in the Securities Company, managed the affairs of the Northwestern Company to its loss and the gain sometimes of its own directors and in other instances to the advantage of the Securities Company in which the plaintiff was largely interested. Under such circumstances the Title Company does not come into a court of equity with clean hands and so far as it seeks relief for itself its prayer ought to be denied. It ill accords with the high standard of good faith demanded of a trustee to award it compensation for personal services when its own conduct, even when cloaked under interlocking boards of directors, did so much to put the *cestui que trust* in default. It is indeed permissible according to the weight of authority, when the transactions are conducted fairly, for one corporation to deal with another where some of the directors hold such a position in both concerns. The following cases treat of the duties of such boards of

officers: *Wardell* v. *Union Pacific R. R. Co.*, 103 U. S.
651 (26 L. Ed. 509); *McGourkey* v. *Toledo etc. R. Co.*,
146 U. S. 536 (36 L. Ed. 1079, 13 Sup. Ct. Rep 170);
*Thomas* v. *Brownville etc. R. Co.*, 109 U. S. 522 (27
L. Ed. 1018, 3 Sup. Ct. Rep. 315); *Gilman etc. Ry. Co.*
v. *Kelly*, 77 Ill. 426; *Sweeny* v. *Grape Sugar Refining
Co.*, 30 W. Va. 443 (4 S. E. 431, 8 Am. St. Rep. 88);
*Pearson* v. *Concord R. R. Corp.*, 62 N. H. 537 (13 Am.
St. Rep. 590); *Goodin* v. *Cincinnati & W. Canal Co.*, 18
Ohio St. 169 (98 Am. Dec. 95).

The analogy to be drawn from these decisions is
that when a corporate trustee assumes control of the
board of directors of its *cestui que trust* and through
them conducts its affairs to the loss of the latter and
its own gain it is guilty of inequitable conduct not to
be countenanced by a court of chancery. It is the duty
of every trustee to act with the utmost fidelity with
respect to the interests of the *cestui que trust* which
have been lodged in its keeping. He cannot right-
fully assume a position in which his own profits will
be enhanced and those of his principal diminished.
Neither can he accomplish this result by indirection;
and the camouflage of an intervening corporation
under identical control designed to effect the same
purpose will not conceal its conduct from the scrutiniz-
ing eye of a court of conscience. For these reasons
we hold that the action of the Circuit Court in deny-
ing the plaintiff's claim for $10,000 as its fee should
be affirmed.

On the whole case the conclusion is that the decree
of the Circuit Court foreclosing the trust deed and or-
dering a sale of property for the satisfaction of
$750,000 par value of the bonds of the Northwestern
Company is affirmed. Its action in denying a fee to
the trustee is also affirmed and the present judgment

against the Title Company is reversed, all without costs or disbursements in favor of either party.

Modified.

Mr. Justice Moore took no part in the consideration of this case.

---

Motion to dismiss denied June 6, 1916.
Argued on the merits March 8, appeal dismissed March 26, motion to retax costs denied May 28, 1918.