No. 25,974.

Ethel Harris Lang, as Register of Deeds of Coffey County, *Appellant,* v. The Board of County Commissioners of the County of Coffey, *Appellee.*

SYLLABUS BY THE COURT.

1. Public Officers—*Liability of Register of Deeds—Funds Paid to Deputy.* The facts concerning the payment of county funds for clerk hire to a deputy register of deeds in a county having more than 10,000 and less than 15,000 population, and the relevant statute pertaining to the salary and allowances for fees to the register of deeds in such a county, examined, and *held,* that the register of deeds is not liable to the county for public funds paid on order of the board of county commissioners to such deputy on any mistake of law or fact for which the register of deeds was not responsible, and where there is neither claim nor pretense that the register herself received any portion of the moneys sought to be recovered by the county.

2. Same. Certain arguments presented by appellee to uphold the judgment against the register of deeds considered and disapproved; and judgment in favor of the register directed.

Appeal from Coffey district court; WILLIAM C. HARRIS, judge. Opinion filed June 6, 1925. Reversed.

L. H. Hannen, of Burlington, G. H. Lamb, and W. E. Hogueland, both ˙of Yates Center, for the appellant.

Ray S. Pierson, county attorney, and Joe Rolston, of Burlington, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff, register of deeds of Coffey county, brought this action to recover a part of her salary which the board of county commissioners withheld from her because of the following circumstances:

Prior to July 1, 1922, the population of Coffey county was above 15,000, and the register's salary and allowances provided by statute were $1,500 per annum, and $600 per annum for clerk hire. (R. S. 28-114.) The same statute gave the county commissioners discretionary power to make additional allowances for clerk hire where· necessary to conduct the register's official business expeditiously.

On July 1, 1922, the population of Coffey county fell below 15,000 inhabitants, and consequently the compensation of the register automatically changed to $1,400 per annum plus one-half of all official fees earned by her in excess of $350 in any one quarter. (R. S. 28-114.) No specific allowance for clerk hire is made by statute for registers in counties of less than 15,000; but probably the general authority of the county board to supply necessary clerk hire to expedite the official business of the register of deeds is no less in coun-· ties under 15,000 than in others. At least the statute is open to that interpretation, but the point is not vital in this lawsuit, so it need not be determined.

By R. S. 19-1202 every register of deeds is authorized to appoint a deputy, although there is no express provision for the payment of such deputy. The deputy usually serves as clerk and draws the· statutory allowance for clerk hire, and where no statutory allowance is made the deputy either gets no pay, or such pay as comes out. of the register's own pocket, or such allowance as may be made by the county board under its general powers mentioned in R. S. 28-· 114, and perhaps in other relevant statutes.

In December, 1921, the plaintiff register of deeds named W. M. Phillips as deputy. The minutes of the board read:

"Board now approves the appointment of W. M. Phillips as deputy register of deeds."

Of course this approval was not required by law, but the appointment was probably submitted for the board's approval because if the deputy was to get any pay for services it would be as clerk and not strictly as deputy, and the county board's approval of the person appointed, while not perhaps absolutely necessary, was quite desirable. The county board is the supervising general manager of all county affairs, and it is a good practice and tends to good local government when county officers so conduct their particular offices as to meet the approval of the county board.

On January 1, 1922, the county board adopted the following resolution:

"On motion made and carried, the board ordered . . . that the deputy register of deeds be paid $60 [per month]."

Here again, we infer, this relates to the compensation allowed to this functionary not precisely as deputy, but for the clerical services performed by the deputy.

For December, 1921, and January, 1922, Phillips drew $50 per month—the proportionate monthly allowance for clerk hire under the statute. But from then onward, for February, March and April, Phillips filed claims for $60 per month, which were approved by the register, approved by the county attorney, allowed and ordered paid by the county board, and the money was paid to Phillips pursuant thereto.

On May 1, 1922, Blondell Bayall succeeded Phillips, by appointment, as deputy register of deeds, and she regularly drew a monthly allowance of $60 from May 1, 1922, to January 1, 1924. Her vouchers were approved by the plaintiff as register of deeds, and were approved by the county attorney, and were allowed and ordered paid by the county board, and paid accordingly. It would appear that no notice was taken at the time of the effect of the slump in population on county officers' salaries and allowances. Neither was any particular notice taken of the fact that during the time that clerk hire was authorized and fixed by statute, prior to July 1, 1922, the register's deputy or clerk was paid $10 a month more than the law expressly allowed.

During the period when the register's deputy and clerk, Blondell Bayall, drew $60 per month, from July 1, 1922, to January 1, 1924, the register's fees collected and turned into the county treasury were in excess of $350 in every quarterly period, and aggregated $4,669.95, of which the county received $2,100 as a matter of primary right un-

der the statute (R. S. 28-115), and of the excess, one-half, $1,284.95, went to the county, and the other half, $1,284.95, became the property of the register. (R. S. 28-114.)

When the county board met in March, 1924, there was on file for consideration and allowance the plaintiff's monthly salary vouchers for January and February of that year. The board rejected these . salary claims and made a formal demand upon plaintiff that she reimburse the county for the money paid out on order of the county board for clerk hire in the register's office from July 1, 1922, to December 31, 1924.

Hence this lawsuit.

The litigants filed an agreed statement of facts, and some evidence was introduced by the parties on matters about which they could not agree. Some offers of evidence by plaintiff which the trial court excluded were not brought into the record as the code provides (R. S. 60-3004), but the controlling features of the action are as narrated above.

The trial court gave judgment in favor of the defendant county board *for costs only*, but entered also a declaratory judgment, viz.:

"The board of county commissioners of Coffey county, Kansas, have the right to deduct from the salary and excess fees of the appellant the money heretofore paid for clerk hire for said appellant."

Can this judgment be correct? The plaintiff did not get the money the county board paid out. The board should look for that money at the hands of the person who received it. If they fail to get it back from that source—and we make no intimation that they can—then the board would do well to consider whether or not they themselves are not chiefly at fault for any unwarranted expenditure of public funds. The board exercised the responsible authority; the board ordered the money paid. The register of deeds was not at fault. Her approvals of the vouchers for her deputy and clerk were of no legal significance except to assure the county board as to the identity of the claimant and that the services for which compensation was sought had in fact been performed. (*King v. Wooster,* 111 Kan. 625, 627, 208 Pac. 799.) No less remote, perhaps, was the responsibility of the county attorney, who, as legal adviser of the county board, approved the claims for clerk hire. He could not be held legally responsible for mere errors in judgment or mistakes of law where no negligence is shown. (*Russell v. Considine,* 101 Kan. 631, 168 Pac. 1095; *Hicks v. Davis,* 100 Kan. 4, 163 Pac. 799;

Throop on Public Officers, 259, 817; Mechem's Public Offices and Officers, 194 *et seq.;* 6 C. J. 696-698.) The county clerk who drew the warrants and the county treasurer who paid them were mere ministerial officers, having no responsibility for the improper payment of these clerical allowances (29 Cyc. 1441), although either of them might have balked at their payment. (*National Bank v. Heflebower,* 58 Kan. 792, 51 Pac. 225; *The State, ex rel., v. Younkin,* 108 Kan. 634, 196 Pac. 620.) But there is no reason to believe that either of these county officials, or the county commissioners themselves, had actual notice of the decline of the county's population, or that they realized that such decline required a readjustment of the clerical fees allowed by law for services performed in the office of the register of deeds.

Noting the high points of the argument for appellee, it is first assumed that the main question is whether a register of deeds in a county having more than 10,000 and less than 15,000 population is entitled to clerk hire, and that the determination of this appeal turns on whether this question is answered "yes" or "no." That is not the question at all. The question is whether plaintiff shall be required to reimburse the county for moneys paid to somebody else under some mistake of fact or of law, or mixed error of law and fact.

It is also urged by appellee that the register of deeds is "responsible for her deputies." Very true. She is responsible for the faithful performance of their duties as her deputies, as her clerks. (R. S. 19-1202.) She is responsible for their accuracy and fidelity; she is morally responsible for their diligence, their courtesy to the public, and the like. She is not financially responsible for the return of moneys which they—not she—received from the county on vouchers audited, approved and allowed by the board of county commissioners, unless she has knowingly participated in some conspiracy or other fraudulent scheme to procure the unlawful expenditure of county funds in their behalf. (Throop on Public Officers, 554.)

Neither the judgment in favor of defendant for costs nor the declaratory judgment touching the plaintiff's liability can be sustained on any sound theory of law or equity. It must, therefore, be reversed with instructions to enter judgment for plaintiff.

It is so ordered.