## BOARD OF EDUCATION OF NEBO SCHOOL DIST. v. JEPPSON, County Treasurer, et al.

No. 4807.   Decided June 13, 1929.   (280 P. 1065.)
Rehearing Denied October 1, 1929.

*Dickson, Ellis, Parsons & Adamson,* of Salt Lake City, for appellants.

*J. W. Robinson* and *J. Robert Robinson,* both of Provo, for respondent.

BRAMEL, District Judge.

The undisputed facts in this case are as follows: In the year 1925, some time prior to May 1, the assessor of Utah county, assessed that part of the property of the Columbia Steel Corporation within the Nebo school district at a valuation of $1,285,790. On June 5, 1925, the board of county commissioners of Utah county met as a board of equalization to equalize valuations. Officials of the Columbia Steel Corporation appeared before the county board of equalization at that time and made objection, both orally and in writing, to the valuation placed upon the property of the company and requested a reduction. No decision was made by the board at that time. The board was busy with many matters, and many people were present with complaints. The amount involved in this item was large and the matter required extensive investigation. Therefore the board informed the

representatives of the company that this item would be given special consideration later. On or about June 20, 1925, the board, with all members present, went to the plant of the Columbia Steel Corporation, where the board discussed the matter with officials of the company and informed the officials that the board would take the complaint under advisement and act upon the same at the first opportunity. The board and its members made investigations thereafter, but no decision as to abatement of valuation was made until some time in November, 1925. Some time in November, the auditor of Utah county wrote a letter to the state board of equalization, wherein he stated that board of county commissioners wished to reconvene as a board of equalization on November 16, 1925, to make an adjustment of $250,000 in the case of the Columbia Steel Corporation and some other adjustments in other cases. The state board of equalization, on November 24th, replied to this letter with a resolution permitting the commissioners to reconvene as a board of equalization to equalize the valuations of certain properties, but refused to permit any change in the valuation of the Columbia Steel Corporation property. Thereafter, and on November 23, and again on November 27, the board of county commissioners reconvened as a board of equalization and at the meeting of November 27, by resolution, abated the assessment of the Columbia Steel Corporation property by the sum of $250,000 and directed the assessor to cancel the first assessment and enter the new assessment. The resolution recites that at the meeting of June 5 the matter was taken under advisement for further investigation.

Pursuant to this resolution, the county assessor of Utah county abated the valuation of the property of the Columbia Steel Corporation on the tax book, which book was then in possession of the county treasurer, by the sum of $250,0000 and the treasurer then collected from the company the taxes for the year 1925 in the amount shown to be owing upon the assessed valuation after such abatement. The treasurer

acted in good faith and under the belief that his actions were legal in all respects.

By means of such abatement the amount of tax money collected by the county treasurer for Nebo school district was lessened by the sum of $2,050. It is for this sum, with interest, that plaintiff, in September, 1926, brought this action against Henry Jeppson, as treasurer, and the sureties on his official bond. The term of office of said Jeppson expired December 31, 1926, and on January 1, 1927, John C. Taylor became his successor in office.

A judgment for $2,050, with interest, was rendered against "Henry Jeppson as Treasurer of Utah County, and his successor in office, John C. Taylor, as Treasurer of Utah County, State of Utah." John C. Taylor was not a party to the action in any capacity.

The second amended complaint, upon which trial was had and judgment rendered, was filed January 25, 1927. Judgment was given March 24, 1928. Jeppson was not treasurer at the time the second amended complaint was filed or at any time thereafter. Other facts will be stated in this opinion.

1. Our first conclusion is that the judgment in question is a personal judgment against Jeppson. The recital in the judgment that it is "against Defendant Henry Jeppson, as Treasurer of Utah County," avails nothing. The recital could as well be that the judgment is against him as ex-treasurer. The judgment is against Jeppson in his personal, private capacity. It cannot upon the record be any other kind of a judgment. Taylor was not a party to the action. On the face of the record the judgment against Taylor appears to be a nullity.

2. Is Henry Jeppson answerable to plaintiff for the alleged tax deficiency in question? Comp. Laws Utah 1917, § 5918, provides that "the assessor and his sureties are liable on his official bond for all taxes on property within the county which, through his wilful failure or neglect, is un-

assessed or which has been by him wilfully assessed at less than its cash value."

Thus we see that an assessor, who is frequently confronted by uncertainties as to his course of duty in the matter of assessments, is to be held liable to the public for wilful misfeasance only. Is there any reason why a similar measure of toleration should not be accorded to a treasurer who is performing official administrative or quasi judicial acts of like character under like circumstances?

As to public moneys that have come into a treasurer's possession and are with him for safe-keeping, the statutes, in a mandatory manner, fix the duties, and therefore the measure of liability, of the treasurer and his sureties. As to the measure of his liability in other matters the statutes are silent.

But in a case where the treasurer is performing ministerial acts or is acting in an executive or quasi judicial capacity and not as a custodian of public funds, is he under the same strict rule as to liability for these acts as he is under as a custodian of public funds? We are of the opinion that he is not, and especially so when such acts are in the nature of a continuation of the work of the assessor.

Let it be observed that the statute quoted defines the attitude of the public towards an assessor who makes an error to the prejudice of the public. We do not say that this statute in any wise directly applies to any officer save the assessor, nevertheless it does suggest a rule of leniency which many courts have applied in cases like this. *Jefferson County* v. *Ross*, 196 Ky. 366, 244 S. W. 793; *Tyler* v. *Cass County*, 1 N. D. 369, 48 N. W. 232; *Stutsman County* v. *Wallace*, 142 U. S. 293, 12 S. Ct. 227, 35 L. Ed. 1018.

It has long been a principle of common law that a ministerial officer whose duty it is to act under the order or the warrant of a court, or of a superior officer, or of an official body, is not liable for obeying his mandate if it appears to be within general jurisdiction of the tribunal, superior officer, or official body that issued it and

is fair upon its face. A great weight of authority upholds and emphasizes this principle, as will appear from cases cited later.

By the term "general jurisdiction" is meant the field of power and authority defined by law and conferred by law upon a tribunal or an official body or an officer. True it is that certain procedural steps or antecedent acts are generally required in order to invoke the exercise of this general jurisdiction in a particular case or instance. The extent of the general jurisdiction of a tribunal or official body or officer and the limitation upon such jurisdiction are defined in the laws of the land. All men and officers are, generally speaking, conclusively presumed to know the extent of this general jurisdiction. But as to whether a prerequisite step necessary to give an officer or tribunal jurisdiction to act in a particular case falling within general jurisdiction has or has not been taken, a different rule prevails. The steps or acts that invoke jurisdiction are generally facts in pais or performances of a party to the proceeding. An officer holding a writ fair upon its face may assume, and according to most rulings must assume, that the body or tribunal having general jurisdiction to issue writs of that class had special jurisdiction to act in the particular case in which the writ was issued. *Haffin* v. *Mason*, 15 Wall. 671, 21 L. Ed. 196; *Kercheval* v. *Allen* (C. C. A.) 220 F. 262; *Harding* v. *Woodcock*, 137 U. S. 43, 11 S. Ct. 6, 34 L. Ed. 580; *Holdredge* v. *McCombs*, 8 Kan. App. 663, 56 P. 536; *State* v. *King*, 30 Ind. App. 389, 66 N. E. 85; *Rush* v. *Buckley*, 100 Me. 322, 61 A. 774, 70 L. R. A. 464, 4 Ann. Cas. 318; *Sprague* v. *Birchard*, 1 Wis. 457, 60 Am. Dec. 393, and other cases herein.

The respondent contends, however, that the resolution or order of the county board directing the assessor to make this abatement was not fair upon its face, because not certified by the auditor, and that it failed to show jurisdiction on the part of the board to make such an order and that the act of the assessor was a nullity.

The statutes of Utah, chapter 117, Laws Utah 1919, provide that the board of county commissioners is the county board of equalization, and that it must meet as such on the 1st day of June of each year to examine the assessment books and equalize assessments, and that it must continue in session until the equalizing is completed, but not later than the 20th day of June. Chapter 114, Laws Utah 1919, further provides that the state board of equalization may reconvene any county board of equalization at any time it deems necessary and may extend the time any county board of equalization may sit, and that a county board of equalization thus reconvened shall transact no business except that for which it was reconvened or such other business as the state board may call to its attention while in session.

One ground upon which this contention seems to be based is that the statutes of Utah make the county auditor the clerk of the county board of equalization and that the order directing the assessor to abate the valuation was certified by the county clerk, and not by the county auditor.

The statutes further provide, Comp. Laws Utah 1917, § 5979, that the assessor must be present at meetings of the board of equalization, and Comp. Laws Utah 1917, § 5981, that "during the sessions of the board of county commissioners, it may direct the assessor to add property or to correct descriptions. The copy of the resolution of the board of equalization under which the assessor made the changes in question purports to be signed by the chairman of the board, purports to be a resolution of the board of county commissioners sitting as a board of equalization, and directs the assessor to abate the assessment in question.

It does not affirmatively appear in the statutes that such a resolution or communication must be certified. However, the statutes do provide that the county clerk must report all proceedings of the board of county commissioners, must make full record of all its resolutions and decisions on all questions concerning the raising of money for the county, and perform all other duties required by the board. Comp.

Laws Utah 1917, § 1385. Under the circumstances, we are compelled to hold that the order under which the assessor acted in changing the assessment was in fact a resolution of the county board of equalization and was not void upon its face, and that it authorized the assessor to make the change. In so holding we are guided by the principle that a writ that exhibits a mere irregularity in the manner of its issuance or attestation is not void and is amendable, and if really issued by a competent tribunal protects the officer acting under such writ.

In a case where an order of seizure was attested by one not an officer of the court, the officer serving that writ was protected. The Supreme Court of the United States held that the writ was not void, was amendable, and was fair upon its face, notwithstanding a faulty attestation. *Bryan* v. *Ker*, 222 U. S. 107, 32 S. Ct. 26, 56 L. Ed. 114.

Other facts presented as having some bearing upon the question are that the board of county commissioners when sitting as a board of equalization frequently did county commissioner's' work and equalization work. As one witness puts it, "They were intermingled." They would sit as a board of equalization for a few minutes and then turn to a board of county commissioners. Sometimes the county clerk made record of the proceedings of the board of equalization. The county auditor was generally called in to make such records. In the case of the resolution in question the auditor knew that it was in the county commissioner book and had seen it, but had never "been requested to make a record of it." At all events, the assessor, on November 27, 1925, made the change in valuation upon the treasurer's tax roll. On December 1, 1925, the county auditor affixed to this tax roll his affidavit that "I have kept correct minutes of all the acts of this Board of County Commissioners touching alterations in the assessment rolls; that all alterations agreed to or directed have been made and entered in the rolls and that no changes or alterations have been made therein except those authorized," etc. We

are of the opinion that these formal defects in the record of the proceedings are all minor irregularities, amendable in their nature, and nonjurisdictional in their effect, and that they are all obviated by the curative provisions of Comp. Laws Utah 1917, § 6087, which provides:

"No assessment or act relating to assessment or collection of taxes is illegal on account of informality."

We place in the same category the fact that the auditor was not at the meeting, if such be the fact. *Salina City* v. *Lewis,* 52 Utah 7, 172 P. 286. For these reasons we hold that the tax roll, under which the treasurer acted, was his warrant and that it was fair upon its face.

3. Further contention is made by respondent to the effect that the order of the board of county commissioners sitting as a board of equalization in November, 1925, was a nullity in so far as it attempted to abate the valuation in question, because the order of the state board of equalization denied the county board permission to consider that particular item. From these premises it is argued that the county board of equalization had no jurisdiction over this particular item as a matter of law; that the treasurer knew or should be held to have known this fact; and that consequently his warrant, which was based upon the order of the board, was void and no warrant at all to collect less than the original tax.

We are not inclined to follow this argument to the conclusion reached by respondent. As appears from cases herein cited, courts are not disposed to charge a ministerial officer with knowledge of defects in the antecedent procedural steps and requirements that are necessary in a particular case to invoke the jurisdiction of a board or tribunal that issues a warrant to such officer.

Now, the county board of equalization did obtain permission to sit in November, 1925, and it did sit. It, as an institution, was in existence and had jurisdiction to equalize taxes. This was its general institutional jurisdiction. Of

the limits of this general jurisdiction all men are charged with notice. Whether the antecedent acts necessary to invoke the jurisdiction of the board as to any particular item had or had not been performed would not appear in any public law. The officer holding a writ or order fair upon its face would not be chargeable with notice or knowledge of any deficiency in the preliminary steps required to give the board authority to consider any particular item. In the hands of the officer the writ itself is an assertion by the board that the proper antecedent steps had been taken and that the board had jurisdiction over the matter mentioned in the writ. These principles of law are either impliedly or expressly declared in practically every case cited in this opinion. Cooley, Taxation (3d Ed.) pp. 1441, 1442; 29 Cyc. pp. 1477-1481; *School Dist.* v. *Lewis,* 35 N. J. Law 377. Therefore we hold that the treasurer was not chargeable with any notice or knowledge of the refusal of the state board of equalization to permit the county board to consider the case of the steel company's assessment.

4. Further contention is made to the effect that the treasurer actually knew the facts in the case or enough of the facts to put him upon notice, and is therefore liable if the board of equalization had no jurisdiction. In other words, it is contended that the treasurer should have decided that his tax roll as amended was void as to the item in question. At this point it is suggested that a quasi judicial duty was thrown upon the treasurer.

Generally speaking, all men are presumed to know the law, and, generally speaking, this presumption cannot be overcome by proof to the contrary. Yet there are instances in which a public officer who in good faith, and in a perplexing situation, makes an erroneous decision as to his course of duty and acts thereon and thereby violates the law, will not be held liable. Whether we call such a case an exception to the general rule or refer the exemption to another principle is a matter of verbalism.

Such a case is *Jefferson County* v. *Ross*, 196 Ky. 366, 244 S. W. 793. In this case Ross, a tax collector, in good faith, and in a perplexing situation as to the rule of law governing the matter, paid over to the state auditor certain taxes which should have been paid over to the school board. It was held that the tax collector was not liable to the school board for diverting the funds. Other cases much to the point on the principles involved herein are: *Tyler* v. *Cass County*, 1 N. D. 369, 48 N. W. 232; *Kendall* v. *Stokes*, 3 How. 87, 11 L. Ed. 506; *Lang* v. *Board of Commissioners*, 118 Kan. 723, 236 P. 853; *Keifer* v. *Smith*, 103 Neb. 675, 173 N. W. 685; *Sprague* v. *Birchard*, 1 Wis. 457, 60 Am. Dec. 393.

The facts of the case at bar are that the treasurer had heard talk about irregularities, and had consulted the county attorney about the matter. The county attorney advised the treasurer to proceed to collect the reassessed tax. The statutes of Utah, Comp. Laws 1917, § 1610, make the county attorney the legal adviser of county officials on matters relating to public duties of their respective offices. To hold that a county officer who, in a case like this, in good faith consults the county attorney as to an act in the line of official duty and in good faith follows the advice given, must thereafter be held personally liable for performing the act as advised, would surely convert any benefit contemplated by this law into a worthless boon. There is authority to the effect that under such a law as this it is the duty of an officer to follow the advice of his statutory legal adviser. *Rasure* v. *Sparks*, 75 Okl. 181, 183 P. 495.

County officials are, with rare exceptions, honest, worthy men of modest means who faithfully serve the public and perform their duties with best intentions according to their lights. The small salaries paid these public servants for transacting important financial business is some evidence to the effect that they are not to be held in all cases as insurers of the perfection of their honest judgment or of the technical perfection of their proceedings taken in good faith and thereby be impoverished as a reward for honest service.

Courts are reluctant to hold an officer responsible for an erroneous decision, and especially so in a case where he acted honestly and in good faith. The fact that the treasurer in good faith obtained the advice of the county attorney and followed that advice is an additional consideration in his favor.

A ministerial duty of an officer is a duty that is prescribed by law in a manner that leaves no discretion to the officer performing the same. A judicial or quasi judicial duty is one that requires the exercise of judgment, or requires choice of alternatives in its performance. *State ex rel.* v. *Erickson,* 170 Wis. 205, 174 N. W. 919; *State* v. *Howard,* 83 Vt. 6, 74 A. 392; *Utah Ass'n of Credit Men* v. *Bowman,* 38 Utah 326, 113 P. 63, Ann. Cas. 1913B, 334. An officer performing a quasi judicial duty is not liable for an honest mistake in judgment. *Garff* v. *Smith,* 31, Utah 102, 86 P. 772, 120 Am. St. Rep. 924; *Salt Lake County* v. *Clinton,* 39 Utah 462, 117 P. 1075; *Deatsch* v. *Fairfield,* 27 Ariz. 387, 233 P. 887, 38 A. L. R. 651; *Stevens* v. *North States Motor,* 161 Minn. 345, 201 N. W. 435, 40 A. L. R. 36; *Brown* v. *Nelson,* 50 N. D. 589, 197 N. W. 223. If we look upon the treasurer with his tax roll as a ministerial officer pure and simple, it was his duty to collect the taxes shown upon the roll as made up by the officers who make and mend tax rolls. A typical ministerial officer has no discretion and has no right to go behind his writ. He must obey his writ if it is fair upon its face and was within the general jurisdiction of the officer or tribunal that issued it. If we look upon the treasurer in this instance as an officer who was confronted by a situation that compelled him to make a decision upon a question of doubt and difficulty as to his official duty, we must hold that he acted in a quasi judicial capacity for that turn or decision and is not liable for an erroneous decision made in good faith. It was stipulated at the trial that the treasurer acted in good faith and under the belief that his actions were legal in all respects.

5. It was strenuously contended by the respondent that

the county board had no jurisdiction as a matter of law to make any reassessment as to the item in question and that all proceedings of the board and all other officers are void. The appellant vigorously resisted this contention. Under the view we take of the case, it is not necessary for this court to pass upon this question. This is an action that seeks a personal judgment against the treasurer. For the reasons above stated we hold that no recovery may be had against him upon the facts presented.

As said in *Stutsman County* v. *Wallace*, 142 U. S. 293, 12 S. Ct. 227, 232, 35 L. Ed. 1018, supra: "Things may be void as to all persons and for all purposes, or as to some persons and for some purposes." We have held that the reassessment proceeding cannot be called a nullity for the purpose of charging the treasurer with liability for the alleged mistake or misfeasance of all the officials who preceded him in making the reassessment. What decision should be made in case of a direct attack upon the action of the county board will be discussed when such a case is presented.

The judgment of the district court is reversed, and the court is directed to dismiss this action. Appellants to recover costs.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.

ELIAS HANSEN, J., being disqualified, did not participate herein.

ON PETITION FOR REHEARING.

PER CURIAM. Respondent has filed a petition for rehearing. One matter not brought to the attention of the court at the former hearing is the claim of respondent that John C. Taylor, as treasurer, was a party to the proceedings and that he voluntarily entered his appearance.

Taylor is not mentioned in the complaint in the court be-

low. No prayer for judgment or relief against him is contained in any motion or pleading. In fact, Taylor is not mentioned in any paper filed in the cause until after the trial. After the case was tried and the trial judge ■ had handed down a written decision in favor of the plaintiff and against Jeppson, Taylor for the first time seemingly attempted to come into the case, when on February 10, 1928, he, as treasurer of Utah county, and as successor in office to Jeppson, filed in court a document stating that he "voluntarily makes his appearance" in the case, "and consents that the testimony heretofore offered in said cause may be considered as having been offered to the same extent and effect as if this said John C. Taylor, treasurer of said county, had been a party to said cause from the beginning." This document does not appear to have been served upon anybody or any party.

Our attention has not been called to any order making Taylor a party. There is nothing in the pleadings or in the evidence charging Taylor with any deliction or indebtedness or liability whatsoever. By the pleadings nothing is claimed or asserted against him. The document is in no wise a confession of judgment. It does not authorize the entry of a judgment against him for a specified or any sum or for any kind of a judgment. It does not state any facts upon which any judgment may be based. It does not in any of its elements fall within the statute providing for a judgment by confession. On the record it may only be presumed that Taylor filed the document in the cause to collect whatever the defendant Jeppson might be required to pay. But the judgment entered against him is a personal money judgment not on the record supported by any pleading, claim, or evidence whatsoever.

True sections 6545 and 7029, Comp. Laws Utah 1917, provide that "a defendant" may appear in certain ways. Section 7029 defines an appearance in these words:

"A defendant appears * * * when he answers, demurs, or gives the plaintiff written notice of his appearance."

But John C. Taylor was not a defendant, was not made a party to the suit and was not entitled to appear in the action. Nor does it appear that he gave notice to any one of his appearance. His attempt to get into the case, if it is worthy of a name, was at most an attempt to intervene without complying with any of the provisions of the statute entitling him to entrance.

Even in cases involving parties to an action—parties who are named as such and have been brought into court as such—it is held by many cases that a judgment not based upon pleadings is absolutely void. 33 C. J. 1132.

And in all cases it is held that a money judgment against one not a party to the action and not charged with liability is a nullity. 33 C. J. 1106.

In all cases we have found the judgment challenged was based upon a pleading that sought relief against the party prejudiced by the judgment. In the case at bar no pleading or party seeks a judgment against Taylor, no facts giving the court jurisdiction to render a personal judgment against him are pleaded or proved or on the record, and Taylor does not consent to such a judgment.

The respondent in its petition and brief for rehearing says:

"We frankly admit that the conclusions of law (in the court below) are inaccurately drawn and that the form of judgment is wrong. We can readily appreciate why this court looking at the conclusions of law and the form of the judgment alone, could arrive at the conclusion that the respondent is seeking a personal judgment against Jeppson."

We arrived at the conclusions that respondent not only sought a personal judgment against Jeppson, but also obtained such a judgment against him, and we are still of that opinion.

And further in said petition and brief the respondent says:

"No one had the slightest idea of requiring either Henry Jeppson or John C. Taylor to pay this money personally,"

and that the trial court should have ordered Taylor, as treasurer and successor to Jeppson, to collect the money and that

"This is the only conclusion and the only judgment the respondent is entitled to either under the evidence or the findings of the court."

This is a case where the record affirmatively shows that no judgment should have been rendered against Taylor. There was no charge against him and there was no action pending against him.

Even in cases where the person prejudiced by the judgment is a party to the action and relief is prayed against him and the record affirmatively shows that there is no cause of action stated against him, most courts have held the judgment a nullity. The case at bar, so far as lack of jurisdictional essentials to support the judgment against Taylor is concerned, is more extreme than any case we have found. We feel that we are speaking softly and accurately in calling the judgment a nullity. *Miller* v. *Prout*, 33 Idaho 709, 197 P. 1023; *Hodson* v. *O'Keeffe*, 71 Mont. 322, 229 P. 722; *Hough* v. *Lucas*, 76 Colo. 94, 230 P. 789; *Title Insurance Co.* v. *Northwestern Tel. Co.*, 88 Or. 666, 173 P. 251; *Traill County* v. *State*, 42 N. D. 253, 172 N. W. 782; *McCamant* v. *McCamant* (Tex. Civ. App.) 187 S. W. 1096; *Lilly* v. *Claypool*, 59 W. Va. 130, 53 S. E. 22.

Respondent requests this court to modify its decision so as to order or permit the trial court to order Jeppson or his successor in office to collect the alleged tax deficiency. This request ignores the fact that Jeppson is no longer treasurer. His term of office expired nearly three years ago. Nothing in the record gives this court jurisdiction over Taylor or his successor in office.

The matter presented to this court was and is whether or not a personal judgment for a sum of money against Jeppson was proper. We held that it was not. The respondent concedes that it was not. This amended complaint upon which this trial was had was made and filed against Jeppson as

sole defendant after Jeppson had ceased to be treasurer at a time when he had lost all power and authority, if any he had, to correct or to alter records, and all power to collect taxes or to seize or sell property for tax debts. Of what avail was the prayer that he be ordered to collect the tax or suffer judgment for the amount of the tax? How could Jeppson collect the tax?

This court refuses to rule in advance what action may or may not be taken by plaintiff against others involved in the transaction.

The motion for rehearing is denied.